IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARMAINE SIDES,

        Plaintiff,

v.                                                     CIV 19-0579 MV/KBM

ANDREW SAUL,
Commissioner of Social
Security Administration,

        Defendant.

## PROPOSED FINDINGS & RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 20*) filed on December 3, 2019. Having considered the record, submissions of counsel, and relevant law, the Court recommends that Plaintiff's motion be **GRANTED** in part.[1]

## I.    Procedural History

On April 27, 2016, Ms. Charmaine Sides (Plaintiff) filed an application with the Social Security Administration for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. *See* Administrative Record[2] (AR) at 237-43. Plaintiff alleged a disability onset date of April 1, 2015. *See* AR at 237. Disability Determination Services (DDS) determined that Plaintiff was not disabled both initially (AR at 119-35) and on

---

[1] Judge Vazquez entered an Order of Reference Relating to Social Security Appeals on October 28, 2019, referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." *Doc. 17*.

[2] Document 10-1 contains the sealed Administrative Record. *See Doc. 10-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

reconsideration (AR at 136-52). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her SSI application. AR at 168-70.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 92-109. ALJ Ann Farris issued an unfavorable decision on September 20, 2018. AR at 7-23. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 226), which the council denied on April 25, 2019 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 416.920(a)(4)(i-iv); *see also Grogan v.*

2

*Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. § 416.945(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process, ALJ Farris found that Plaintiff "has not engaged in substantial gainful activity since April 27, 2016, the application date." AR at 12 (citing 20 C.F.R. §§ 416.971-416.976). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: a history of remote Open Reduction and Internal Fixation (ORIF) in the right [f]oot, Obesity, Polysubstance Abuse, Post-Traumatic Stress Disorder [(PTSD)], and Bipolar Disorder." AR at 12 (citing 20 C.F.R. § 416.920(c)). The ALJ found that Plaintiff's hypertension is non-severe and that she has non-medically determinable sciatica. AR at 12.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 . . . ." AR at 13 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). At Step Four, the ALJ considered the evidence of record and found that Plaintiff "has the residual functional capacity to perform less than a full range of light work as defined in 20 [C.F.R. §] 416.967(b). She

can perform simple routine tasks with reasoning level one, with few workplace changes. She can have occasional and superficial interaction with coworkers." AR at 14.

ALJ Farris concluded that Plaintiff has no past relevant work (AR at 18 (citing 20 C.F.R. § 416.965)), but she is able to perform work as a Housekeeping Cleaner and a Band Salvager. AR at 19. The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, since April 27, 2016, the date the application was filed." AR at 19 (citing 20 C.F.R. § 416.920(g)).

## III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV.   Discussion

Plaintiff asserts that reversal is warranted for three reasons: (1) the RFC is not supported by substantial evidence; (2) the ALJ improperly rejected two opinions; and (3) the Step Five finding is not supported by substantial evidence. *Doc. 20* at 1-2. The Court begins with an examination of the ALJ's evaluation of the medical opinions.

### A.   ALJ Farris erred in evaluating two opinions.

Plaintiff argues that ALJ Farris inadequately evaluated the medical opinions provided by James Kuzava, Licensed Independent Social Worker (LISW), and Warren Steinman, Ph.D. *Id.* at 17-22.

#### 1.   LISW Kuzava

Plaintiff submitted seven records from Mr. Kuzava: (1) an April 28, 2015 Comprehensive Clinical Assessment and Master Treatment Plan from Plaintiff's first appointment with the New Mexico Behavioral Health Institute (NMBHI) (AR at 390-98); (2) an April 25, 2016 Master Treatment Plan update (AR at 399-404); (3) an October 25, 2016 Master Treatment Plan review (AR at 424-29); (4) an April 20, 2017 Master Treatment Plan review (AR at 452-56); (5) a July 26, 2017 Master Treatment Plan review (AR at 447-51); (6) an October 24, 2017 Master Treatment Plan review (AR at

5

465); and (7) an April 5, 2016 Mental Residual Functional Capacity Questionnaire (AR at 312-16).

These records indicate that Mr. Kuzava is Plaintiff's treating therapist (AR at 457), but the Administrative Record does not include any individual therapy treatment notes. Instead, Mr. Kuzava's Master Treatment Plan records often include "Progress Towards Objectives" sections that summarize notes from medication management appointments with Plaintiff's prescribing clinician at NMBHI, Carol Earnest, Clinical Nurse Specialist (CNS) (*see* AR at 457), or therapy appointments with Mr. Kuzava. *See*, *e.g.*, AR at 401 (noting that Plaintiff "was seen for therapy on 2/22/16 and 4/5/16" and describing symptoms and complaints) and 402 (noting that Plaintiff "was seen for medication management on 10/21/15" and describing complaints).

On April 28, 2015, Mr. Kuzava recorded Plaintiff's diagnoses as bipolar disorder, depressed with psychotic features; PTSD, chronic; cocaine dependence, in sustained full remission; and history of alcohol dependence in sustained full remission. AR at 394. In his Mental RFC Questionnaire, Mr. Kuzava noted that Plaintiff "has been relatively stable while adhering to prescribed psychotropic medication regimen & supportive psychotherapy[,]" but her prognosis is "guarded." AR at 312. He stated that the clinical findings "that demonstrate the severity of [Plaintiff's] mental impairment and symptoms" include "recurring nightmares, intrusive memories, mood swings & intermittent depressed mood." AR at 312. He opined that Plaintiff is "unable to meet competitive standards" in 12 areas, including in her abilities to "sustain an ordinary routine without special supervision"; "work in coordination with or proximity to others without being unduly distracted"; and "get along with co-workers or peers without unduly distracting

6

them or exhibiting behavioral extremes." AR at 314-15. He opined that she is "seriously limited but not precluded" from functioning in 11 areas, including in her abilities to "ask simple questions or request assistance"; "accept instructions and respond appropriately to criticism from supervisors"; and "interact appropriately with the general public." AR at 314-15.

ALJ Farris noted Mr. Kuzava's observations that Plaintiff was "relatively stable" when she was compliant with her therapy and medications. AR at 16. She pointed out 10 of the 12 areas that Mr. Kuzava found Plaintiff was "unable to meet competitive standards" and found that the "restrictions are inconsistent with the treatment notes and the record as a whole." AR at 16-17. ALJ Farris gave "limited weight" to Mr. Kuzava's opinion and stated that she gave "more weight to the opinion by state psychological consultant Renate Wewerka, PhD . . . ." AR at 17 (citing AR at 120-35).

Mr. Kuzava is an "other source" whose "special knowledge of [Plaintiff] may provide insight into the severity of [her] impairment(s) and how [they] affect [her] ability to function." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). While Mr. Kuzava is not an "acceptable medical source" who can offer a medical opinion or "establish the existence of a medically determinable impairment[,]" *id.*, the ALJ is still required to consider and weigh "other source" opinions using the factors set out in 20 C.F.R. § 404.1527(c)(1)-(6). *See Keyes-Zachary*, 695 F.3d at 1161. The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area

upon which an opinion is rendered; and (6) other factors brought to the
ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation omitted).

With respect to the first, second, and third factors, ALJ Farris did not mention that

Plaintiff has seen Mr. Kuzava as her treating therapist since April 2015, nor did the ALJ

cite any of Mr. Kuzava's treatment records. *See* AR at 16-17. This was error, as the ALJ

discounted Mr. Kuzava's opinion in part because it was "inconsistent with the treatment

notes . . . ." AR at 17. Because ALJ Farris found that Mr. Kuzava's opinion was

inconsistent with his treatment notes, she should have highlighted the treatment records

she found were problematic. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir.

2004) (finding that the ALJ erred, in part, because the ALJ stated that a doctor's opinion

was "inconsistent with the overall case record" but did not "specifically highlight those

portions of the record with which [the] opinion was allegedly inconsistent").

With respect to the fourth factor, the ALJ cited several records signed by Ms.

Earnest that showed Plaintiff presented with "no apparent deficits in alertness; she was

oriented to person, time, and place; [and] she showed no apparent deficits in attention,

concentration, or memory." *See* AR at 17 (citing AR at 384, 388, 431-38, 444). The ALJ

also cited to records from Physician Assistant (PA) Laura Cronin to demonstrate that

Plaintiff presented two times with no "concern[s] related [to] mood or anxiety." AR at 17

(citing AR at 328, 331). The Court finds it curious that ALJ Farris highlighted these two

records from PA Cronin, who did not see Plaintiff for mental health complaints, but for

follow up evaluations for sciatica pain. AR at 328, 331. These records stand in contrast

to those from Plaintiff's mental health providers, who noted her "longstanding struggles

with anxiety and depression over the past 13 or so years . . . ." AR at 391; *see also, e.g.*, AR at 368 (May 11, 2016 treatment note from Earnest noting that Plaintiff rated her depression at 8), 443 (Oct. 12, 2017 treatment note from Earnest noting that Plaintiff rated her anxiety and depression at 10), 460 (May 18, 2017 treatment note from Earnest noting that Plaintiff rated her anxiety and depression at 8). Even more curious, one of the records the ALJ cited as reporting no concerns for mood or anxiety actually reflects that PA Cronin administered a PHQ-9 Depression Screening with the results showing "Moderate depression," and PA Cronin recorded "increased anxiety 2/2 to awaiting SSI." AR at 331.

The Court finds it troubling that Plaintiff can point to very little record evidence that would support Mr. Kuzava's opinion outside of citations to Plaintiff's diagnoses, medication/therapy regimen, and several records in which Ms. Earnest checked a box to note that Plaintiff's status was "worsening." *Doc. 20* at 21 (citations omitted); *see also* Doc. *27* at 10-11. The Court is more troubled, however, that ALJ Farris's evaluation of Mr. Kuzava's opinion was so scant. Because, as explained below, ALJ Farris *completely* failed to evaluate Dr. Steinman's opinion, the undersigned will recommend that the Court grant Plaintiff' motion on this issue and remand for further consideration by the ALJ.

### 2.     Dr. Steinman

 Plaintiff underwent a consultative examination with Dr. Steinman on November 16, 2016, at the request of Disability Determination Services. AR at 410-14. Dr. Steinman's examination consisted of a review of the records provided (one treatment plan and three progress notes from NMBHI), an interview with Plaintiff, and some short-

term memory tasks. AR at 411-14. He diagnosed Plaintiff with PTSD, chronic; bipolar disorder, current episode depressed, moderate; alcohol and cocaine dependence, both in remission; and unspecified intellectual disabilities. AR at 413.

An ALJ must also evaluate a non-treating source opinion using the factors as laid out in 20 C.F.R. § 404.1527(c). *See Keyes-Zachary*, 695 F.3d at 1161. Here, ALJ Farris summarized Dr. Steinman's findings and diagnoses and gave "little weight to" his opinion, but she provided absolutely no reasons for her evaluation. AR at 16. The Commissioner admits that ALJ Farris "did not offer specific reasons for the weight" she assigned Dr. Steinman's opinion, but argues that "this error is harmless because [she] explicitly weighed and rejected [LISW] Kuzava's similar opinion, offering several reasons to discount it that are equally applicable to Dr. Steinman's opinion." *Doc. 24* at 19-20 (citation omitted). The undersigned has already found that ALJ Farris's treatment of Mr. Kuzava's opinion was lacking and recommends that the Court grant Plaintiff's motion on this issue.

### B.    On remand, the ALJ should explicitly consider Plaintiff's ability to interact with supervisors.

#### 1.    Moderate limitations in abilities to interact with supervisors and the public

Plaintiff next contends that the ALJ failed to consider limitations in her abilities to interact with supervisors or the public. *Doc. 20* at 10-12. The ALJ included a limitation in the RFC that Plaintiff "can only have occasional and superficial interaction with coworkers[,]" but she did not include any limitations regarding Plaintiff's abilities to interact with supervisors or the general public. AR at 14. Plaintiff argues that this was error, as several providers opined that she was limited in her abilities to interact with

supervisors and the public. *Doc. 20* at 10-12. Mr. Kuzava opined that Plaintiff was "seriously limited" in her ability to "ask simple questions or request assistance[,]" "accept instructions and respond appropriately to criticism from supervisors[,]" and "interact appropriately with the general public." AR at 314-15. The state agency psychological consultants, Dr. Wewerka and Dr. Lev, both found that Plaintiff has moderate limitations in her abilities "to interact appropriately with the general public" and "to accept instructions and respond appropriately to criticism from supervisors." AR at 132, 149. And Dr. Steinman opined that Plaintiff was "likely to distrust supervision" and "likely to have problems relating to others." AR at 414. Despite these opinions, the ALJ did not incorporate a limitation regarding interactions with supervisors or the public into the RFC. *See* AR at 14.

The Commissioner contends that the ALJ did not need to include a limitation on interactions with supervisors and the public, because she limited Plaintiff to unskilled work. *Doc. 24* at 11 (citing AR at 20). "Unskilled work typically involves working with things and not people . . . ." *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(g)). The Court agrees that the RFC clearly incorporates the limitation regarding the general public. *See*, *e.g.*, *Knight v. Colvin*, No. CV 15-0882 KBM, 2016 WL 9489144, at *6 (D.N.M. Dec. 5, 2016) (finding that the definition of "unskilled work does not require *any* interaction with the general public") (discussing *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016); SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).

Regarding the limitation on Plaintiff's ability to interact with supervisors, the Tenth Circuit has found that a limitation to simple, unskilled work sufficiently incorporated moderate limitations to a claimant's ability to interact with supervisors. *See Smith v.*

*Colvin*, 821 F.3d 1264, 1268-69 (10th Cir. 2016). However, because the undersigned recommends remand for further evaluation of Mr. Kuzava's and Dr. Steinman's opinions, which may affect the ALJ's finding on Plaintiff's ability to interact with supervisors, the undersigned recommends that the Court direct the ALJ to specifically consider this limitation on remand.

### 2. Limitations opined by state agency psychologists

Plaintiff argues that ALJ Farris cherry-picked from the moderate limitations opined by the state agency psychologists. *Doc. 20* at 12-17. Dr. Wewerka reviewed the record and completed a Mental Residual Functional Capacity Assessment (MRFCA) on December 5, 2016. AR at 131-33. "[T]he [MRFCA form] requires the [doctor] to first record preliminary conclusions about the effect of the impairment(s) on each of four general areas of mental function [in Section I,] then to prepare a narrative statement of mental RFC [in Section III]."[3] *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. 2016) (quoting POMS § DI 24510.061(A)). Plaintiff takes issue with the ALJ's alleged failure to incorporate limitations Dr. Wewerka opined in three of these areas: (1) sustained concentration and persistence limitations; (2) social interaction limitations; and (3) adaptation limitations. Within the first area, Dr. Wewerka opined in relevant part that Plaintiff has moderate limitations in her abilities to (1) perform activities within a

---

[3] The MRFCA form Dr. Wewerka completed and Dr. Lev affirmed does not identify "Section I," but it does have a section entitled "MRFC1." *See* AR at 131, 148. Nor does it identify a "Section III," but the form does specify that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation." *Id.* "Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box." *Id.; see also Parker v. Berryhill*, No. 16-CV-01182-PAB, 2018 WL 4520151, at *4 n.4 (D. Colo. Sept. 21, 2018).

schedule, maintain regular attendance, and be punctual within customary tolerances; (2) work in coordination with or in proximity to others without being distracted by them; and (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR at 132. Within the second area, she opined that Plaintiff has moderate limitations in her abilities to (1) interact appropriately with the general public; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR at 132. And within the third area, she further opined that Plaintiff has moderate limitations in her ability to respond appropriately to changes in the work setting. AR at 132.

Plaintiff argues that because ALJ Farris gave Dr. Wewerka's opinion significant weight, she erred in failing to either incorporate these moderate limitations into the RFC, explain why she rejected them, or mention them in hypotheticals to the VE. *Doc. 20* at 12-17. "ALJs are required to weigh medical source opinions and to provide 'appropriate explanations for accepting or rejecting such opinions.'" *Silva*, 203 F. Supp. 3d at 1164 (emphasis omitted) (quoting SSR 96-5p, 1996 WL 374183, at *5) (citing *Keyes-Zachary*, 695 F.3d at 1161).

The ALJ determined that Plaintiff is limited to "simple routine tasks with reasoning level one, with few workplace changes. She can only have occasional and superficial interaction with coworkers." AR at 14. The Commissioner argues first that the moderate limitations found in the first section of the MRFCA form "are not part of the state agency psychologists' formal opinions on Plaintiff's functioning; rather, the formal opinions are

13

contained in the narrative/additional explanation section . . . of the MRFCA form." *Doc.*
24 at 14-15 (citations omitted). Moreover, the Commissioner contends, the ALJ's RFC
sufficiently incorporated the moderate limitations. *Id.* at 15-16.

<u>Sustained concentration and persistence limitations</u>

First, the Court finds that ALJ Farris adequately incorporated one of the three
limitations—working in coordinating with or in proximity to others—into the RFC,
because she limited Plaintiff to only occasional and superficial interaction with
coworkers. AR at 14. Regarding the other two moderate limitations—attendance and
punctuality, and completing work activities at a consistent pace—the ALJ specifically
noted the narrative opinion that Plaintiff "appears to be able to function adequately in a
medium stress to low stress environment[,]" despite the state agency psychologists'
findings of moderate limitations in this area. AR at 17 (citing AR at 150). The Court finds
that the narrative section findings do not contradict the moderate limitations in the
MRFC1 section, and there is no reversible error. *See Carver v. Colvin*, 600 F. App'x
616, 619 (10th Cir. 2015).

<u>Social interaction limitations</u>

With respect to the moderate limitation regarding Plaintiff's ability to interact with
supervisors and the general public, the Court addressed this in the previous section.
Regarding the moderate limitation on Plaintiff's ability to get along with coworkers, the
Court finds that ALJ Farris adequately incorporated this into the RFC by limiting Plaintiff
to only "occasional and superficial interactions with coworkers." AR at 14. There is no
reversible error here.

<u>Adaptation limitations</u>

Finally, the Court finds that the ALJ adequately incorporated the moderate limitation in Plaintiff's ability to respond appropriately to changes in the work setting, because she included a limitation in the RFC to "few workplace changes." *Id.* Thus, the undersigned recommends the Court deny Plaintiff's motion on this issue.

**C.      The ALJ did not err at Step Five.**

Finally, Plaintiff contends that ALJ Farris erred by failing to resolve a conflict between the VE's testimony and the DOT. *Doc. 20* at 22-24. The DOT states that a Housekeeping Cleaner "renders personal assistance to patrons." *See* DOT 323.687-104, 1991 WL 672783 (Jan. 1, 2016). Plaintiff argues that this duty contradicts the opined limitations on Plaintiff's ability to interact with the public. She further contends that the ALJ erred in failing to clarify with the VE how Plaintiff "would be able to 'render assistance to patrons' given her limitations with the public." *Doc. 20* at 23 (citations omitted).

The Commissioner argues that there was no error, because the DOT rates both jobs that the ALJ identified as a level 8 in the area of "People," which represents the least amount of interaction with people on a scale of 0 to 8. *See* DOT, App'x B – Explanation of Data, People, & Things, 1991 WL 688701 (Jan. 1, 2016); DOT 323.687-014, 1991 WL 672783 (Jan. 1, 2016); DOT 929.686-014, 1991 WL 688166 (Jan. 1, 2016). Additionally, both positions rate the skill of "talking" as "not present." DOT 323.687-014, 1991 WL 672783; DOT 929.686-014, 1991 WL 688166. Thus, there is no conflict between the DOT's description of the Housekeeping Cleaner position and the RFC.

In *Friday v. Colvin*, the ALJ included a limitation in the claimant's RFC that specified she could have no interaction with the general public and identified Housekeeping Cleaner as a job the claimant could perform. No. CIV-14-1110 LAM, 2016 WL 10592165, at *7 (D.N.M. Jan. 11, 2016). The claimant alleged the ALJ erred by failing to have the VE address the discrepancy between the RFC and the DOT description of the job requiring such an employee to render personal assistance to patrons. *Id.* The court agreed, finding that "[a]lthough the VE did indicate that such interaction would not be more than minimal, the DOT description appears to conflict with the 'no-interaction-with-the-general-public portion of [the claimant's] RFC, which discrepancy the ALJ did not address." *Id.* Accordingly, the court remanded for the ALJ to address the discrepancy.

Here, however, the ALJ did not include a restriction in the RFC to "no interaction with the general public." This single responsibility in the DOT description for Housekeeping Cleaner appears to be minimal, and the DOT rating does not conflict with Plaintiff's RFC or with a moderate limitation in her ability to interact with the public. Thus, the undersigned does not find that the ALJ erred at Step Five.

## V.      Conclusion and Recommendation

I will recommend the Court find that ALJ Farris inadequately evaluated the opinions of LISW Kuzava and Dr. Steinman and remand this case for further proceedings. I further will recommend that the Court direct the ALJ to explicitly consider Plaintiff's ability to interact with supervisors.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Remand be granted.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE